UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NATHAN P. GOLDSTEIN, as he is EXECUTIVE DIRECTOR, MASSACHUSETTS LABORERS' BENEFIT FUNDS,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL SHORING LLC,<br><br>Defendant. | No. 1:23-cv-10924-JEK |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**KOBICK, J.**

Plaintiff Nathan P. Goldstein, the Executive Director and collection agent of the Massachusetts Laborers' Benefit Funds, filed this action against defendant National Shoring LLC to recover unpaid contributions, interest, and damages owed to certain benefit funds. After National Shoring was served but failed to answer or otherwise defend this case, the clerk entered a notice of default against it. Goldstein now moves for default judgment against National Shoring. For the reasons explained below, Goldstein's motion will be granted.

### BACKGROUND

Goldstein initiated this action against National Shoring on behalf of the Massachusetts Laborers' Benefit Funds. ECF 1, ¶ 9. As Executive Director of that organization, Goldstein serves as the collection agent for the contributions owed to five funds governed by the Employee Retirement Income Security Act of 1974 ("ERISA"): the Massachusetts Laborers' Health and Welfare Fund, the Massachusetts Laborers' Pension Fund, the Massachusetts Laborers' Annuity

Fund, the New England Laborers' Training Trust Fund, and the Massachusetts Laborers' Legal Services Fund (collectively the "ERISA Funds"). *Id.* ¶¶ 3-9. The ERISA Funds are all multi-employer plans within the meaning of § 3(37) of ERISA, 29 U.S.C. § 1002(37). ECF 1, ¶ 8. Goldstein likewise has authority to collect contributions owed to the New England Laborers' Labor-Management Cooperation Trust, the New England Laborers' Health and Safety Fund, the Massachusetts Laborers' Unified Trust, and the Construction Industries of Mass. Advancement Fund (collectively the "non-ERISA Funds"), as well as dues owed to the Massachusetts & Northern New England Laborers' District Council (the "Union"). *Id.* ¶¶ 9, 14-15.

Goldstein asserts two claims against National Shoring: a violation of section 515 of ERISA, 29 U.S.C. § 1145 (Count I) and a violation of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (Count II). ECF 1, ¶¶ 21-27. National Shoring did not file an answer or otherwise defend the case. As Goldstein requested, the clerk entered a notice of default under Federal Rule of Civil Procedure 55(a) on January 8, 2024. ECF 6, 8. On February 21, 2024, Goldstein moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(1), requesting recovery of unpaid contributions, prejudgment interest, damages, attorney's fees, and litigation costs. ECF 13, at 1.

**DISCUSSION**

Federal Rule of Civil Procedure 55 establishes a two-step process for entry of a default judgment. First, "the clerk must enter" a notation of default "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Second, default judgment may be entered if the court (1) has "jurisdiction over the subject matter and parties," (2) "the allegations in the complaint state a specific, cognizable claim for relief," and (3) "the defaulted party had fair notice

of its opportunity to object." *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002). Where "the plaintiff's claim is for a sum certain" and is supported by "an affidavit showing the amount due," default judgment may, "on the plaintiff's request," be entered without a hearing. Fed. R. Civ. P. 55(b)(1). Here, all three prerequisites are met, and default judgment is appropriate.

I.   **<u>Jurisdiction.</u>**

The Court has subject matter jurisdiction over this federal question action pursuant to 28 U.S.C. § 1331. *See also* 29 U.S.C. §§ 185(c), 1132(e)(1) (establishing federal court jurisdiction in LMRA and ERISA actions); *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992).

The Court also has personal jurisdiction over National Shoring. In a federal question case, like this one, "a federal court's power to assert personal jurisdiction is geographically expanded," and "the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with a particular forum state (as would be required in a diversity case)." *Id.* "[S]ufficient contacts to justify the assertion of personal jurisdiction exist whenever the defendant is served within the sovereign territory of the United States," provided service is "grounded within a federal statute or Civil Rule." *Id.* (citations and quotation marks omitted). ERISA provides that a defendant "may be served in any . . . district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2); *see Gambino v. Radiant Elec., LLC*, No. 17-cv-10034-ADB, 2017 WL 6544823, at *2 (D. Mass. Dec. 21, 2017) (noting that ERISA allows for nationwide service of process and identifying Fed. R. Civ. P. 4(k)(1)(C) as the mechanism for service under ERISA). In this case, a return of service—which "serves as *prima facie* evidence that service was validly performed," *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008)—was filed on June 1, 2023 and indicates that National Shoring was served with a summons and a copy of the

3

complaint on May 8, 2023 in Pittsfield, Massachusetts through its registered agent. ECF 5. Thus, "[b]y virtue of the fact that [National Shoring] was lawfully served within the United States pursuant to a federal statute, under the law of this circuit, this Court has personal jurisdiction over [National Shoring]." *Gambino*, 2017 WL 6544823, at *2 (citations and quotation marks omitted).

II. **Claims for Relief and Remedies.**

Goldstein has adequately alleged violations of section 515 of ERISA, 29 U.S.C. § 1145, and section 301 of the LMRA, 29 U.S.C. § 185. National Shoring is liable as a result.

"A defaulting party 'is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.'" *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002) (quoting *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999)); *see Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985) ("[T]here is no question that, default having been entered, each of [the plaintiff's] allegations of fact must be taken as true and each of its . . . claims must be considered established as a matter of law."). Courts "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002).

Accepting the factual allegations in the complaint as true, National Shoring and the Union executed an Acceptance of Agreement(s) and Declarations of Trust (the "Acceptance of Agreements") on June 28, 2021. ECF 1, ¶ 11; ECF 1-1, at 1-3. Pursuant to the Acceptance of Agreements, National Shoring agreed to be bound to the terms of certain collective bargaining agreements, including the Building and Site Agreement, effective June 1, 2020 through May 31, 2024, between (i) the Union, (ii) the Labor Relations Division of the Associated General Contractors Association of Massachusetts, Inc., and (iii) the Building Trades Employers'

Association of Boston and Eastern Massachusetts, Inc. (the "CBA"). ECF 1, ¶¶ 11-12; ECF 1-1, at 1; ECF 1-2, at 2. The ERISA Funds and the non-ERISA Funds are third-party beneficiaries of the CBA. ECF 1, ¶¶ 8, 14.

The CBA, through the Acceptance of Agreements, obligated National Shoring to make contributions to the ERISA Funds for each hour worked by its covered employees at prescribed rates. ECF 1, ¶ 13; ECF 1-2, at 14-20, 32-33 (CBA, Art. X, XII-XV, Appx. A). The CBA also required National Shoring to remit contributions to the non-ERISA Funds for each hour worked by covered employees at prescribed rates. ECF 1, ¶ 14; ECF 14, at 3; ECF 1-2, at 15-16, 19-21, 32-33 (CBA, Art. XI, XVI-XVIII, Appx. A). And it required National Shoring to deduct Union dues and contributions to the Laborers' Political League from the pay of covered employees. ECF 1, ¶ 14; ECF 1-2, at 11, 32-33 (CBA, Art. VIII, § 1, Appx. A).

The CBA mandated that National Shoring make the requisite contributions to the ERISA Funds and the non-ERISA Funds by the 20th of the month following the month during which the work was performed. ECF 1, ¶ 13; ECF 1-2, at 14-21, 32-33 (CBA, Art. X-XVIII, Appx. A). The CBA also required National Shoring to submit monthly remittance reports listing the hours worked by its employees and the corresponding contributions due, as well as periodic audits of payroll records. ECF 1, ¶ 17; ECF 1-2, at 14-21, 32-33 (CBA, Art. X-XVIII, Appx. A). Nevertheless, National Shoring failed to submit reports and remit contributions for the work months of October 2022 through March 2023 when it employed laborers during that period. ECF 1, ¶ 19. It also failed to pay contributions for the work months of July 2021, June 2022, and July 2022. *Id.* ¶ 20.

Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in

accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The allegations in the complaint, accepted as true, establish that National Shoring failed to submit remittance reports and make requisite contributions to the ERISA Funds in accordance with the terms of the CBA. Section 301 of LMRA, in turn, provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The allegations in the complaint likewise establish that National Shoring failed to submit remittance reports and make requisite contributions to the non-ERISA Funds and pay Union dues in accordance with the terms of the CBA. *See Gambino*, 2017 WL 6544823, at \*3 ("[L]iability for delinquent contributions to non-ERISA plans is found under the LMRA rather than ERISA." (citations and quotation marks omitted)). Consequently, National Shoring is liable under Section 515 of ERISA and Section 301 of LMRA.

Having concluded that the allegations in Counts I and II suffice to establish liability, the Court now turns to remedies. "[I]f arriving at the judgment amount involves nothing more than arithmetic—the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind." *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 919 (1st Cir. 1988) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). The CBA provided that if National Shoring was delinquent in the payment of contributions, National Shoring would be charged interest on the delinquency at the rate of ten percent per year and liquidated damages in the amount of twenty percent of the delinquency. ECF 1, ¶ 16; ECF 1-2, at 22-23 (CBA, Art. XIX, § 2). The CBA also provided that if National Shoring

failed to submit remittance reports for more than two months or failed to comply with a request for an audit, the ERISA Funds and the non-ERISA Funds would be authorized to estimate the number of hours for which contributions are owed based on the higher of (i) the most recent twelve months audited, or (ii) the last twelve months of the employer's contribution. ECF 1, ¶ 18; ECF 1-2, at 24-25 (CBA, Art. XIX, § 6). Here, an auditor for the Massachusetts Laborers' Benefit Funds conducted an audit in December 2022 that initially revealed that National Shoring owed $34,414.46 in unpaid contributions for the months of July 2021 and April through July 2022. ECF 15, ¶ 4; ECF 19, ¶ 4; ECF 19-1, at 2-10. The audit was updated shortly thereafter to reflect a balance of $34,364.01 in unpaid contributions. ECF 19, ¶ 4; ECF 19-1, at 11-18. A general contractor then paid a portion of National Shoring's $34,364.01 audit bill, which reduced the remaining amount of National Shoring's delinquency to $18,569.17 for the months of July 2021 and June through July 2022. ECF 15, ¶ 6; ECF 19, ¶¶ 4-6; ECF 19-1, at 19-23, 24-25; ECF 19-2, at 3. The interest on National Shoring's delinquency continues to accrue at a rate of ten percent per year and would amount to $2,875.25 if paid on February 21, 2024. ECF 15, ¶ 7. The liquidated damages on National Shoring's delinquency, at a rate of twenty percent, amounts to $3,713.83. *Id.* ¶ 8. Goldstein is entitled to recovery of the unpaid contributions, prejudgment interest, and liquidated damages in the amounts set forth in its submissions to the Court.

Goldstein is also entitled to "reasonable" attorney's fees and costs under the CBA[1] and under ERISA.[2] The $565.57 sought in litigation costs reasonably includes the $402 filing fee and

---

[1] The CBA provides that in the event of National Shoring's delinquency, National Shoring would be charged for reasonable attorney's fees and costs of collection. ECF 1, ¶ 16; ECF 1-2, at 22-23 (CBA, Art. XIX, § 2).

[2] Section 502 of ERISA provides, "in any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or

the cost of serving the complaint on the defendant. *See* ECF 13, at 1; ECF 16, ¶ 3; ECF 19-3. The $8,155.00 in attorney's fees requested by Goldstein is also reasonable. *See* ECF 13, at 1; ECF 16, ¶ 3; ECF 19, ¶ 7; ECF 19-3. "When fashioning a fee award, the district court ordinarily starts by constructing what has come known as the lodestar," which is generally "the product of the number of hours appropriately worked times a reasonable hourly rate or rates." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (citations omitted). As "[t]he party seeking the award," Goldstein "has the burden of producing materials that support the request," which "should include counsel's contemporaneous time and billing records, suitably detailed, and information anent the law firm's standard billing rates." *Id.* (citations omitted). It is also "the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 296 (1st Cir. 2001).

Here, Goldstein has produced detailed time and billing records and has submitted an affidavit declaring that the law firm representing him in this matter charges a billing rate of $350.00 per hour for attorney time and $175 per hour for paralegal time. ECF 19, ¶ 7; ECF 19-3. Upon review of the time and billing records, the Court concludes that plaintiff's counsel spent a reasonable amount of time preparing and filing the complaint, serving the defendant, preparing and filing the request for entry of default, and preparing and filing the motion for default judgment. Accordingly, Goldstein is entitled to $8,720.57 in attorney's fees and costs.

### III. <u>Fair Notice.</u>

Finally, the defendant was properly served by Goldstein on May 8, 2023, *see* ECF 5, and was mailed copies of the return of service, notice of default judgment, and the Court's standing

---

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . , (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

order on motions for default judgment on January 8, 2024, ECF 10. National Shoring has had since May 2023 to respond to the complaint and since February 2024 to respond to the motion for default judgment. It has not appeared to defend itself in this action. Accordingly, National Shoring "had fair notice of its opportunity to object." *In re The Home Restaurants, Inc.*, 285 F.3d at 114.

## CONCLUSION AND ORDER

For the foregoing reasons, Goldstein's motion for default judgment, ECF 13, is GRANTED. Judgment shall enter for Goldstein as follows:

1. Goldstein is entitled to recover the total benefit contributions owed, in the amount of $18,569.17;

2. Goldstein is awarded $2,875.25 in interest;

3. Goldstein is awarded $3,713.83 in liquidated damages; and

4. Goldstein is awarded $8,155.00 in attorney's fees and $565.57 in litigation costs.

SO ORDERED.

/s/ Julia E. Kobick
Julia E. Kobick
United States District Judge

Dated: July 15, 2024